UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | |
|---|---|
| KEVIN SHARP ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.:  2:18-cv-2143 |
| ) | |
| MEMPHIS BONDING COMPANY, ) | |
| INCORPORATED, GEORGE A. HITT, ) | |
| TRACY VAN PITTMAN and ) | |
| JANE DOE (a fictitious party) ) | |
| ) | |
| Defendants ) | |
| ) | |

_____

## COMPLAINT
_____

COMES NOW Plaintiff KEVIN SHARP, by and through undersigned counsel, and files his Complaint for violations of the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq*. ("RICO") , violations of the Truth-in-Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), violations of the Tennessee Consumer Protection Act of 1977 (T.C.A. § 47-18-101, *et seq.*) ("TCPA"), fraud and conversion against Defendants MEMPHIS BONDING COMPANY, INCORPORATED, GEORGE A. HITT, TRACY VAN PITTMAN and JANE DOE (a fictitious party-Defendant), stating the following:

## **PARTIES**

1.  Plaintiff Kevin Sharp ("Mr. Sharp") is an adult resident citizen of Memphis, Shelby County, Tennessee.

2.  Defendant Memphis Bonding Company, Incorporated ("MBC") is a corporation

organized under the laws of the State of Tennessee and doing business in Memphis, Shelby County, Tennessee, which may be served with process through an officer, managing or general agent, or other authorized agent at its principal place of business located at 279 Exchange Ave., Memphis, Tennessee 38105.

3.  Defendant George A. Hitt is an adult resident citizen of Memphis, Shelby County, Tennessee, who may be served with process where he may be found. Upon information and belief, Mr. Hitt is the President and sole shareholder of MBC.

4.  Defendant Tracy Van Pittman is an adult resident citizen of Memphis, Shelby County, Tennessee, who may be served with process where she may be found.

5.  Defendant Jane Doe (a fictitious party) is an individual whose identity is currently unknown to Plaintiff and known to the other Defendants.

## JURISDICTION AND VENUE

6.  This Court has original jurisdiction to hear this Complaint and to adjudicate Plaintiff's RICO claims stated herein under 18 U.S.C. § 1964(c); Plaintiff's TILA claims under 15 U.S.C. § 1640(e); and 28 U.S.C. §§ 1331 and 1337. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

7.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in the District and a substantial part of the events giving rise to the claims stated in this Complaint occurred in the District.

## FACTUAL BACKGROUND

8.  Kevin Sharp is the owner of 1712 Myrna Lane., Memphis, TN 38117 (the "Real Property"). Mr. Sharp owns the Real Property in fee simple after his wife Melisha Sharp passed away.

9. Darian Terrell is the son of Melisha Sharp. Sometime prior to August 7, 2015, Mr. Terrell was arrested and incarcerated. The presiding court set Mr. Terrell's bail at $75,000.00. Melisha Sharp apparently contacted MBC about purchasing a bail bond for Mr. Terrell's release from jail. At that time, Melisha Sharp and her husband Mr. Sharp were estranged and not living together. In fact, Mr. Sharp was in the hospital when he received a call from Melisha Sharp asking him to go to MBC to sign some documents so that her son could get out of jail.

10. When Mr. Sharp was released from the hospital, Mr. Sharp drove to MBC's office at 279 Exchange Ave., Memphis, TN 38105. When he arrived, Mr. Sharp met with a bonding agent. That person ("Defendant Jane Doe") was female. Mr. Sharp explained to Jane Doe that he was there to arrange for the release of Mr. Terrell. Melisha Sharp had already made the financial arrangements, but Mr. Sharp knew he was there to sign some documents which would guarantee Mr. Terrell's appearance in court. When Mr. Sharp asked what the documents were, Jane Doe explained that Mr. Sharp was using his house to guarantee that Mr. Terrell would show up in court, and if Mr. Terrell did not show up in court, Mr. Sharp would owe money. There was no other discussion of owing any money since Melisha Sharp had already made financial arrangements. There was also no discussion about MBC obtaining or maintaining a lien on the Real Property. Jane Doe presented Mr. Sharp with one side of a two-sided document to sign. Jane Doe was the only person present to witness the signing of that one document. Mr. Sharp did not see anyone notarize the document and did not sign a notary book. After signing, but without receiving a copy of what he signed, Mr. Sharp left the premises.

11. On August 18, 2015, MBC filed a Deed of Trust (attached as Exhibit 1) with the Register's Office of Shelby County, Tennessee, which recorded the Deed of Trust as Instrument

Number 15082272.  According to the Register's Office, the Deed of Trust arrived via U.S. Mail with a check from MBC in the amount of $96.95 for the filing fee.  The Deed of Trust is a pre-preprinted form with blanks that were filled in with the date of August 7, 2015, the names of Kevin and Melisha Sharp as the "first part", Memphis Bonding Company as the "Trustee" and Grantee of the Real Property, the property description of the Real Property, and a description of indebtedness to Memphis Bonding Co., Inc. in the sum of $75,000.00 "as evidenced by … Collateral for Darian Terrell."  On the second page, signatures purport to be that of "Kevin Sharp" and "Melisha Sharp" and a corporate acknowledgment form is completed below the signature of Mr. Sharp.  Finally, the signature of a notary appears twice along with a notary seal of "Tracy Van Pittman."  Having reviewed the document, Mr. Sharp cannot ascertain whether the signatures on the Deed of Trust are authentic.

12. Darian Terrell appeared in court, and the bail bond was not forfeited.  However, despite Jane Doe's previous representations, MBC did not return the collateral to Mr. Sharp.  As Mr. Sharp only recently learned, the Deed of Trust remains as a $75,000.00 encumbrance on his Real Property.

13. After learning that the Deed of Trust exists in the public record, Mr. Sharp went to the office of MBC to inquire about the Deed of Trust and any outstanding indebtedness.  There, he spoke with a male employee who informed him that he owes approximately $4,100 to MBC.  Mr. Sharp asked for any copies of documents he may have signed, and MBC refused to provide any.

14. A cursory search of the online records of the Office of the Register of Deeds in Shelby County, Tennessee, and even the land records of the Chancery Court of DeSoto County, Mississippi, indicates that over the past several years, MBC has been a prolific filer of Deeds of

Trust identical in form to the one purportedly signed by Mr. Sharp.

15. Two other lawsuits with very similar allegations have been filed in this Court, in the style of *Deirdre Knight v. Memphis Bonding Company, Incorporated, et al.,* Cause No. 2:18-cv-02112, and *Robert Bailey v. Memphis Bonding Company, Incorporated, et al.,* Cause No. 2:18-cv-2115.

## COUNT ONE: VIOLATIONS OF RICO

16. The Plaintiff re-avers and incorporates by reference the averments made throughout this Complaint into Count One.

17. Plaintiff is a "person" with standing to sue within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

18. Each of the Defendants is a RICO "person" within the meaning of 18 U.S.C. § 1961(3) because each is an entity capable of holding a legal or beneficial interest in property.

19. All Defendants have associated together as an association-in-fact, and therefore an enterprise within the meaning of 18 U.S.C. § 1961(4). Such RICO Enterprise has an ongoing relationship with a common purpose of using false authentication features to file Deeds of Trust as alleged "security" on false or illegal debts and collecting money from homeowners who have lost access to the equity in their homes as a result of the fraudulently filed Deeds of Trust.

20. The RICO Enterprise is engaged in interstate commerce in that its activities and transactions relating to the arrangement of bail bond agreements, collection of bail bond fees and the practice of taking title to Real Property in both Shelby County, Tennessee, and DeSoto County, Mississippi, require movement and communications across state lines and use of interstate facilities such as the mail and wire systems used by banking industry.

21. The members of the RICO Enterprise function as a continuing unit in maintaining

fraudulent security interests and collecting money based on those fraudulent security interests.

22. The RICO Enterprise consists of the following actions by MBC:

- MBC, through individual bail bonding agents like Jane Doe, offers to write a bail bond ("appearance bond") for a person incarcerated in Shelby County, Tennessee;

- As part of the "application" process, MBC requires a friend or relative of the person incarcerated to sign an "Indemnity Agreement" which lists the amount of the appearance bond as the total, but only potential, liability (if the incarcerated person does not appear in court after being released under the bail bond);

- MBC also requires the "indemnitors" to sign a "Promissory Note" on the amount of the potential liability if the appearance bond is forfeited and a separate "Promissory Note" on any unpaid portion of the "Premium" which MBC is allowed to charge under Tennessee law.  If MBC cannot obtain signatures on these documents—as alleged in other filed cases—MBC simply forges the signature and/or refuses to provide copies of the alleged "debt" when asked for it.  In either case, MBC refuses to provide copies of these documents to any person who allegedly signed them;

- Either at the same time that the "indemnitors" sign other documents, or at a later date, if the "indemnitor" owns Real Property, MBC requires the "indemnitor" to sign a Deed of Trust securing the entire amount of the potential liability on the appearance bond.  MBC and its bail bonding agents inform the "indemnitor" that the Deed of Trust is only collateral to ensure the appearance of the incarcerated person in court.  The Deed of Trust even states that it is "collateral for [incarcerated person]."  The Deed of Trust is not signed in front of notary public

making the transaction seem less formal;

- MBC employs a notary public to affix a notary seal to the Deed of Trust (which is required under both Tennessee and Mississippi law to file a document securing Real Property at the recording office) after the fact of the signature;

- MBC determines the filing fee required to file the Deed of Trust with the appropriate recording office then places the Deed of Trust with a check for the filing fee in the U.S. Mail for delivery to the recording office;

- MBC's check is negotiated using the wire system employed by the United States banking system;

- After the charges against the formerly incarcerated person are resolved and liability on the appearance bond is terminated, MBC does not (as was represented) return or release the Deed of Trust. Instead, MBC simply retains a security interest in perpetuity;

- MBC does not actively attempt to collect the "debts" it has fraudulently secured, and MBC does not seek to foreclose on the Deed of Trust. The "indemnitor" usually realizes that the Deed of Trust (in the exorbitant amount of the former, potential liability on the appearance bond) exists in the public record when the "indemnitor" performs a title search in anticipation of selling the Real Property or obtaining credit using the Real Property as security. At that point, when the "indemnitor" contacts MBC, MBC informs the "indemnitor" of the "debt" but MBC refuses to provide any documentation about the "debt." Instead, MBC uses its ill-gotten leverage to extort the payment of a "loan" which is illegal under state law in the first place.

23. The RICO Enterprise described above constitutes an unlawful pattern of racketeering under 18 U.S.C. 1962. The pattern is established by several Complaints in similar form to this one which have been or will be filed by the time of service of process. The acts of "racketeering" defined under 18 U.S.C. 1961 include extortionate credit extension, mail fraud, wire fraud and fraud and related activity in connection with identification documents, authentication features and information. MBC commits the unlawful acts in conspiracy with its President and/or sole shareholder Hitt and agents/employees (Jane Doe and Tracy Van Pittman) to do the same. The Defendants pose a continuous threat of engaging in those racketeering acts because the Deeds of Trust remain permanent liens on Plaintiff's and other person's Real Property.

24. Those practices are a regular way of conducting the ongoing business of each Defendant and of conducting or participating in the ongoing enterprise.

25. On Plaintiff's RICO claim against all Defendants, Plaintiff seeks statutory and/or actual damages of not less than $100,000.00, costs and attorney's fees.

## COUNT TWO: VIOLATIONS OF TILA

26. Plaintiff re-avers and incorporates by reference the averments made throughout this Complaint into Count Two, which is pleaded additionally and alternatively because Defendant failed to provide Mr. Sharp copies of any documents he allegedly signed and in the event Defendant MBC produces any evidence of underlying debt, and for Count Two, Plaintiff alleges violations of TILA against Defendant MBC.

27. Plaintiff avers that any agreement to defer payment of the 10% premium and other fees associated with a bail bond constitutes consumer credit extended for a personal or family purpose within the meaning of TILA, 15 U.S.C. § 1602(g) and (i), and Regulation Z, 12

C.F.R. § 1026.2(a)(12).

28. MBC regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments, and is the entity to which the transaction which is the subject of this action is initially payable, making MBC a creditor within the meaning of TILA, 15 U.S.C. § 1602(g) and Regulation Z, 12 C.F.R. § 1026.2(a)(17).

29. MBC violated the requirements of TILA and Regulation Z by failing to provide any disclosures of the debt now claimed and in the following and other respects:

   a. By failing to provide the required disclosures clearly and conspicuously in writing, segregated from everything else and in a form which the Plaintiff could keep: any finance charge, the amount financed, a separate itemization of the amount financed, the payment schedule, and a statement that the consumer should refer to the appropriate contract document for information about nonpayment, default, the right to accelerate the maturity of the obligation and prepayment rebates and penalties, in violation of 15 U.S.C. § 1638(b) and Regulation Z, 12 C.F.R. § 1026.17;

   b. By failing to provide a statement that a security interest has been taken in (A) the property which is purchased as a part of the credit transaction, or (B) property not purchased as part of the credit transaction identified by item or type, as required by 15 U.S.C. § 1638(a)(9);

   c. By failing to provide a statement in the case of a consumer credit transaction that is secured by the principal dwelling of the consumer, in which the extension of credit may exceed the fair market value of the dwelling, a clear and conspicuous

      statement that (A) the interest on the portion of the credit extension that is greater than the fair market value of the dwelling is not tax deductible for the Federal income tax purposes; and (B) the consumer should consult a tax adviser for further information regarding the deductibility of interest and charges;

    d. By failing to provide the number, amounts, and timing of payments scheduled to repay the obligation, in violation of 15 U.S.C. § 1638(a)(6) and Regulation Z, 12 C.F.R. § 1026.18(g).

30. On Plaintiff's TILA claims against Defendant MBC, Plaintiff seeks statutory and/or actual damages and, alternatively, rescission of the credit agreement(s) allegedly secured by the Deed of Trust. Plaintiff also seeks all costs and attorney's fees.

## COUNT THREE: VIOLATIONS OF TENNESSEE CONSUMER PROTECTION ACT of 1977 (T.C.A. § 47-18-101, *et seq.*)

31. Plaintiff re-avers and incorporates by reference the averments made throughout this Complaint into Count Three, which is pleaded additionally and alternatively, and for Count Three, Plaintiff alleges that Defendant MBC violated the TCPA.

32. Plaintiff alleges that Defendant MBC violated the TCPA by engaging in unfair and deceptive acts and practices in the course of selling their services to the Plaintiff.

33. Defendant MBC is a "person" as defined by the Tennessee Consumer Protection Act, T.C.A. §47-18-103(9).

34. MBC violated the TCPA, specifically T.C.A. § 47-18-104(a) by employing unfair or deceptive acts affecting the conduct of trade or commerce. The unfair or deceptive acts include representing that Plaintiff only signed the Deed of Trust as security for Mr. Terrell's appearance in court, and not for any underlying obligation to repay a loan or other extension of credit. Further, pursuant to Tennessee law, any bail bondsman who accepts collateral for a bail

bond must return that collateral when liability on the bond is terminated.  MBC's practice of obtaining a Deed of Trust and alleging that it is security for otherwise unsecured notes specifically violates T.C.A. § 47-18-104(b)(12) which declares "representing that a consumer transaction confers or involves rights, remedies or obligations that it does not have or involve or which are prohibited by law" an unlawful unfair or deceptive practice.

35. As a result of MBC's violation of the TCPA, it is liable to Plaintiff for all actual damages not less than $100,000.00, as well as attorney's fees and costs pursuant to TCPA, T.C.A. § 47-18-109(e)(1).

36. In addition, to the extent that Defendant's violations were intentional (as opposed to merely negligent), the actual damages to Plaintiff should be trebled pursuant to the TCPA, T.C.A. § 47-18-109(a)(3).

## COUNT FOUR: FRAUD

37. Plaintiff re-avers and incorporates by reference the averments made throughout this Complaint into Count Four, which is pleaded additionally and alternatively, and for Count Four, Plaintiff alleges that Defendants MBC, Hitt, Pittman and Doe committed fraud individually and as part of a civil conspiracy.

38. Defendants individually and as part of a conspiracy made material representations of fact to Plaintiff Kevin Sharp.  First, MBC and its President/owner Hitt employed its agents/employees to make the representation that by signing any documents, Mr. Sharp was only securing the appearance of his step-son Darian Terrell in court and not pledging security for any underlying debt.  Those representations were made in person and in the Deed of Trust (which is silent as to any underlying debt).  Defendant Tracy Van Pittman made a material misrepresentation that she witnessed the signing of the Deed of Trust when she was not even

present with Mr. Sharp or Jane Doe. The false representations, taken separately and as a whole in furtherance of their conspiracy, were relied upon by Mr. Sharp. Although Mr. Sharp denies signing the Deed of Trust which was filed, he was encouraged to sign a "document" under representations made to him, and somehow that document relates to the Deed of Trust. To this date, Mr. Sharp's house remains encumbered to the extent of $75,000.00 even though MBC itself claims that he owes approximately $4,100. Defendant Tracy Van Pittman and/or other employees/agents have continued the conspiracy in attempting to collect the fraudulent debt through the falsely filed Deed of Trust. This fraudulent scheme has caused Mr. Sharp damages in the loss of access to credit on the equity in his home.

39. On Plaintiff's fraud claim, Plaintiff seeks the damages for the full value of his lost property not less than $100,000.00 and punitive damages against all Defendants jointly and severally.

## COUNT FIVE: CONVERSION

40. Plaintiff re-avers and incorporates by reference the averments made throughout this Complaint into Count Five, which is pleaded additionally and alternatively, and for Count Five, Plaintiff alleges that Defendants MBC, Hitt, Pittman and Doe committed conversion of Plaintiff's property, individually and as part of a civil conspiracy.

41. Defendants' scheme outlined throughout this Complaint served to deprive Mr. Sharp of the title to and enjoyment of his Real Property. Defendants' actions were intentional, willful and done with malice.

42. As a result of the conversion, Mr. Sharp seeks damages for the full value of his Real Property not less than $100,000 and punitive damages against all Defendants jointly and severally.

**WHEREFORE**, Plaintiff respectfully prays that this Court:

1. On Count One, award Plaintiff actual and/or statutory damages not less than $100,000.00, costs, attorneys' fees and any other relief (including equitable relief) available under RICO against all Defendants;

2. On Count Two, award Plaintiff actual and/or statutory damages, costs, attorneys' fees and any other relief (including equitable relief) available under TILA against Defendant MBC;

3. On Count Three, award Plaintiff actual and/or statutory damages not less than $100,000.00 (plus treble damages), costs, attorneys' fees and any other relief available under TCPA against Defendant MBC;

4. On Count Four, award Plaintiff actual damages not less than $100,000.00 and punitive damages against all Defendants jointly and severally for fraud;

5. On Count Five, award Plaintiff actual damages not less than $100,000.00 and punitive damages against Defendants jointly and severally for conversion; and

6. Award any other additional relief to which Plaintiff may be entitled at law or equity.

Submitted this 1st day of March, 2018.

RESPECTFULLY SUBMITTED,

s/ Matthew F. Jones
Matthew F. Jones (MS 100430, TN BPR # 25825)
MEMPHIS AREA LEGAL SERVICES, INC.
22 N. Front Street, 11th Floor
Memphis, TN 38103
(901) 523-8822
(901) 255-3429 (direct)
(901) 843-2929 (fax)
mjones@malsi.org